J-S29020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AUSTIN MICHAEL YANNELLA | : | |
| | : | |
| Appellant | : | No. 314 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 6, 2022
In the Court of Common Pleas of Cambria County
Criminal Division at CP-11-CR-0000736-2021

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: OCTOBER 17, 2022**

Austin Michael Yannella (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts each of aggravated assault and simple assault; and one count each of firearms not to be carried without a license, recklessly endangering another person (REAP), and resisting arrest[1] (collectively, the jury offenses).  The trial court separately convicted Appellant of failure to stop at a red signal, and driving while operating privilege is suspended or revoked[2] (collectively, the summary offenses).  We affirm.

The trial court recounted the relevant facts and procedural history of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(2) and (a)(6), 2701(a)(1) and (a)(3), 6106(a)(1), 2705, 5104.

[2] 75 Pa.C.S.A. §§ 3112(a)(3), 1543(a).

On or about July 13, 2021, Chief Travis Shilling of the Patton Borough Police Department was on stationary traffic watch in Patton Borough, Cambria County when he observed a vehicle make a left turn through a steady red [traffic] light. Chief Shilling initiated a traffic stop as the subject vehicle was turning into the Patton Sheetz parking lot. As Chief Shilling pulled into the parking lot, [Appellant,] the driver of the subject vehicle[,] exited his car. Chief Shilling asked [Appellant] to return to his vehicle, but he refused to do so and began yelling and walking away. Chief Shilling approached [Appellant] and again requested that he return to his vehicle, but [Appellant] refused, began yelling obscenities at the officer, and began clenching his fists and jumping up and down. Chief Shilling removed his taser from its holster and again asked [Appellant] to comply. [Appellant] then walked to the back of Chief Shilling's cruiser and pulled a black firearm from [Appellant's] waistband. Chief Shilling then deployed his taser and, with the help of a bystander, secured [Appellant's] weapon and took him into custody.

\* \* \*

[After the Commonwealth charged Appellant with the above offenses, the defense] made several oral requests for a continuance to [the trial c]ourt at a review hearing on September 29, 2021, and at jury selection on September 30, 2021. N.T., 9/29/2021, pp. 4, 9, 11, 13; N.T., 9/30/2021, pp. 10, 15, 21. Appellant's stated reasons for requesting a continuance were that: (1) he had not been provided with sufficient time to review the evidence which the Commonwealth intended to present at trial[;] (2) he had not had time to meet with a second attorney that had been appointed on his case[;] (3) he needed additional information to decide between pursuing a jury or non-jury trial[;] and (4) his lead attorney, [] Maureen McQuillan[, Esquire (Attorney McQuillan)[3]], was "ineffective" in some unspecified way. *Id.* After discussions lasting several hours with Appellant and his attorneys on both of the above dates[,] and repeated explanations of Appellant's options, [the trial c]ourt chose to deny the requests for a continuance and proceeded to jury selection. N.T., 9/29/2021, pp. 3-5, 8-13; N.T., 9/30/2021, pp. 10-29.

---

[3] Attorney McQuillan represents Appellant on appeal.

Trial Court Opinion, 5/5/22, at 1-2, 4 (unnumbered) (footnote 3 added, citations modified).

At trial, Attorney McQuillan claimed in her opening statement that Appellant suffered from mental health issues which would explain his bizarre and "paranoid" behavior. *See* N.T., 10/18/21, at 29 & 30 ("[Appellant] was diagnosed with schizophrenia in 2020," and "suffers from auditory and visual hallucinations" that can "cause him to act out in paranoid ways at times."); *id.* at 30 ("[Appellant] is prescribed certain medications" and "suffered from ADHD as a child."); *id.* at 33 ("[Appellant] is marginalized, under-treated for his diseases"). Appellant did not present any witnesses at trial to confirm the purported issues.

Later at trial, the Commonwealth played for the jury a video of the incident (video) taken by Chief Shilling's police body camera. *Id.* at 49 (admission and publication of the video – Commonwealth Ex. 2 – without objection). The following exchange occurred at sidebar:

> THE COURT: … [W]e talked in chambers and [the defense] had indicated [it] wanted to play a [separate] portion of the body cam [video] with [Appellant's] statements after he had been tased and was being placed in custody. Was it after he was cuffed?
>
> ATTORNEY MCQUILLAN: During and after.
>
> THE COURT: And the Commonwealth objected…. If you want to indicate what you want to [introduce into evidence,] … I will give you my ruling.
>
> ATTORNEY MCQUILLAN: Thank you, Your Honor. … [T]he Commonwealth provided us [in discovery with] body cam [video] of … the actual arrest of [Appellant]. The Commonwealth played

a portion of [the video for the jury], but not the entire two- or three-minute [video]. We would suggest that … [the complete video] would be admissible to paint the full picture of the statements that were uttered between [Appellant] and the officer during the arrest.

* * *

THE COURT: Commonwealth, your position?

[THE PROSECUTOR]: Your Honor, just to be clear, in [the defense's] opening there was reference to [Appellant's] mental health, specifically schizophrenia. I think at this point the video would be offered to allow the jury to make a conclusion that, yes, [Appellant] does have these issues, this is why he should potentially be found not guilty. I would object to the playing of the rest of [the video] just because of the conclusions that the jury could derive from the statements made by [Appellant] in relation to his mental health.

* * *

THE COURT: Is it my understanding that the statements made after [Appellant] was in cuffs seem [to be] a bit ranting after he had been tased …[?]

ATTORNEY MCQUILLAN: Agreed, yes, Your Honor.

[THE PROSECUTOR]: Yes, Your Honor. [Appellant] discusses enemy forces being after him. I believe there's a neuro-implant being discussed, which is the reason for my objection.

THE COURT: … [D]oes the defense intend to call any other witnesses to lay a foundation as to his mental health or anything else?

ATTORNEY MCQUILLAN: No, Your Honor.

THE COURT: So I want my record to be really clear. The [defense's] opening statement went into great detail about [Appellant's] childhood and his mental health diagnoses with no evidence. [T]here is lacking any foundation of that, so it is the [c]ourt's belief that the request to now play [the full video] is a way to backdoor that through statements without any expert

- 4 -

testimony[,] allowing the jury to make inferences based upon representations made in the opening that were not evidence. As a result of that, … I am going to deny the [defense's] request to play the portion at the end [of the video] because, I think, of what [the defense] put forward to the jury in the opening.

… I think it goes beyond not being relevant as being able to be misconstrued with evidence not of record. So at this point I am denying the portion of [the video] after [Appellant] is tased, but you are permitted to play the rest of it if you choose. …

*Id.* at 94-96.

Following trial, the jury convicted Appellant of the jury offenses, and the trial court convicted him of the summary offenses. On January 6, 2022, the trial court sentenced Appellant to an aggregate of 90 - 180 months in prison. Appellant filed a timely post-sentence motion seeking modification of his sentence and a new trial. After a hearing, the trial court granted Appellant's motion, in part, and modified the sentence for REAP to run concurrent with the sentence for one count of aggravated assault. The court otherwise denied relief. This timely appeal followed.[4]

Appellant presents two issues for our review:

1. Whether the trial court unreasonably denied [Appellant] a continuance of jury selection and trial, when [Appellant] requested additional time to review evidence and confer with counsel prior to *voir dire*?

2. Whether the trial court abused its discretion in refusing to admit the entire body camera video recorded by the officer-victim, and only admitted the portion selected by the Commonwealth, thereby depriving the jury of the complete

_____

[4] Appellant and the trial court have complied with Pa.R.A.P. 1925.

- 5 -

depiction of the events underlying [Appellant's] criminal charges?

Appellant's Brief at 3.

In his first issue, Appellant argues the trial court improperly denied his pre-trial request for a continuance, and failed to give him sufficient time to prepare a defense. *See id.* at 8-9; *see also* Post-Sentence Motion, 1/13/22, at 3 (claiming court error for denying the continuance request). Appellant contends:

> It cannot be said that [Appellant's] continuance request came merely as an attempt to delay or as a stall tactic. Appellant requested the continuance to obtain more time to review discovery and meet with counsel, including a recently assigned attorney. Appellant avers that he did not have sufficient time to review discovery with his counsel and was therefore unable to prepare his defense. Appellant avers that he was not given sufficient time to meet with counsel to review the evidence which the Commonwealth intended to use at trial.

Appellant's Brief at 9 (paragraph break omitted).

Our standard of review from the denial of a continuance request is as follows:

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. [A]n abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is over-ridden or misapplied, or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record. The grant of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated.

*Commonwealth v. Hansley*, 24 A.3d 410, 418 (Pa. Super. 2011) (citation omitted); *see also* Pa.R.Crim.P. 106(a) (governing continuances). "In order

to demonstrate prejudice, **the appellant must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time**." *Commonwealth v. Broitman*, 217 A.3d 297, 300 (Pa. Super. 2019) (emphasis added; citation omitted). "In reviewing a denial of a continuance, the appellate court must have regard for the orderly administration of justice, as well as the right of the defendant to have adequate time to prepare a defense." *Commonwealth v. Wesley*, 753 A.2d 204, 215 (Pa. 2000).

The Commonwealth defends the trial court's denial of Appellant's continuance request, claiming:

> [Appellant] presents an argument that he vaguely "did not have enough time to review discovery" and he was "unable to prepare his defense." Brief for Appellant, p. 9. Nowhere in his brief does [Appellant] present any substantive argument relative to how the denial of the continuance prejudiced him[.]

Commonwealth Brief at 7. The Commonwealth asserts a "review of the transcript from both a hearing held on September 29, 2021[,] and a jury selection on September 30, 2021[,] undermines [Appellant's] argument." *Id.*; *see also id.* at 7-11 (citing relevant transcript excerpts). We agree.

As the trial court explained:

> Attorney McQuillan testified[, prior to jury selection,] … that she had reviewed the evidence with Appellant. N.T., 9/30/2021, pp. 10-13. Further, this [c]ourt provided Appellant with roughly an hour and a half during the September 30 hearing, not including discussions held in the days prior, to confer with his attorneys on these issues. *Id.* at p. 9. Taking into account the representations of his attorneys and discussions with Appellant, this [c]ourt determined that a continuance would be inappropriate and denied

Appellant's request. Based on the record as outlined here, this decision clearly does not constitute an abuse of discretion[.]

Trial Court Opinion, 5/5/22, at 4 (unnumbered) (citations modified).

The record and law support the trial court's reasoning. Appellant fails to explain how he was prejudiced by the denial of a continuance. *Hansley*, 24 A.3d at 418 (to prevail on a claim of error for the denial of a continuance, appellant must establish prejudice). Appellant has failed to "show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time." *Broitman*, 217 A.3d at 300. Further, the record confirms the trial court afforded Appellant adequate time to prepare his defense, review discovery, and consult with counsel. *See*, *e.g.*, Trial Court Opinion, 5/5/22, at 4 (there were "discussions lasting several hours with Appellant and his attorneys on both" September 29 & 30, 2021, and "repeated explanations of Appellant's options"); *see also* N.T., 9/30/21, at 13 (Attorney McQuillan responding in the affirmative to the trial court asking whether she "feel[s] comfortable" that all relevant information was explained to Appellant prior to trial, and Appellant had adequate time to prepare a defense). Appellant's first issue does not merit relief.

In his second issue, Appellant claims the trial court improperly denied his request to admit into evidence "the *entire* body camera video recorded by [Chief Shilling], and only admitted the portion selected by the Commonwealth, thereby depriving the jury of the complete depiction of the events underlying [Appellant's] criminal charges." Appellant's Brief at 10 (italics added; bold

omitted); *see also id.* at 11 ("in the video was an interaction between Appellant and [Chief Shilling] in which Appellant made many bizarre statements as well as pleading for his life and the opportunity to care for his young son."). Appellant contends "the entire video may well have provided the jury with insight into the Appellant's state of mind relative to the intent elements of aggravated assault." *Id.* at 11. Appellant also cites Pa.R.E. 106, which provides, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time."). Appellant's Brief at 10; *see also Commonwealth v. Raboin*, 258 A.3d 412, 422 (Pa. 2021) (with respect to Rule 106, the "adverse party carries the burden of demonstrating that the remaining portion of the writing or recording is relevant.").

The Commonwealth responds that Appellant's request to play the complete video "would have been improper to buttress the [defense's] opening statement with evidence that was not relevant." Commonwealth Brief at 12 (bold omitted); *see also* N.T., 10/18/21, at 29, 30, 33 (Attorney McQuillan's opening statement implicating Appellant's alleged mental health issues). The Commonwealth argues:

> No medical doctor testified about [Appellant's alleged mental health] conditions, and no counselor or family member testified about his mental health. There was absolutely zero evidence placed in the record that would support the facts raised in the opening given by the defense. Even if there were, there was no effort to plead insanity, nor to argue that [Appellant] was not

- 9 -

competent, nor that he acted in the heat of passion. There was no material or logical relevance to his mental health, as it is not a legitimate defense to the charges he faced at trial. … For this reason, the trial court very appropriately barred the introduction of [Appellant's] paranoid ramblings that were made subsequent to his arrest [in the video].

Commonwealth Brief at 13-14 (paragraph break omitted).

We are mindful of our standard of review:

When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Commonwealth v. Jackson*, 2022 PA Super 156, *4 (Pa. Super. Sept. 13, 2022) (citation omitted).

The threshold inquiry with admission of evidence is whether evidence is relevant. *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564, 577 (Pa. Super. 2005). Evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 570 Pa. 117, 808 A.2d 893, 904 (Pa. Super. 2002). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

*Jackson*, 2022 PA Super 156, **4-5.

Instantly, the trial court explained its ruling regarding the video as follows:

[The trial c]ourt determined that a portion of the [video] … ought to be excluded from evidence because it would tend to mislead

- 10 -

the jury. N.T.[,] 10/18/2021, pp. 94-96. The excluded portion of the video depicted part of Chief Shilling's handcuffing of Appellant and an approximately one-minute-long period after, during which Appellant made a series of bizarre statements. *Id.* at 95. The Commonwealth objected to the introduction of this portion of the [video] … because, in her opening argument, Attorney McQuillan made reference to Appellant's alleged history of mental illness. **Appellant's attorney did not, at any time, call a witness or otherwise lay a foundation for Appellant's alleged mental illness and stated to this [c]ourt that she had no intention to do so.** *Id.* at 96. The [c]ourt denied this request, expressing concern that **showing the footage would "allow[] the jury to make inferences based upon representations made in the opening that were not evidence**." *Id.* This concern clearly falls under the aegis of "misleading the jury" as provided in [Pennsylvania] Rule of Evidence 403 [("**The court may exclude relevant evidence if its probative value is outweighed by a danger of** one of more of the following: unfair prejudice, confusing the issues, **misleading the jury**, undue delay, wasting time, or needlessly presenting cumulative evidence." (emphasis added))].

Trial Court Opinion, 5/5/22, at 4-5 (unnumbered) (emphasis added); ***see also***

N.T., 10/18/21, at 96 (trial court finding the excluded portion of the video

"goes beyond not being relevant as being able to be misconstrued with

evidence not of record.").

Upon review, we discern no error or abuse of discretion by the trial

court. The excluded portion of the video bore no relationship to the evidence presented at trial,[5] and could serve to confuse or mislead the jury. ***See***, ***e.g.***, ***Commonwealth v. Byrd***, 598 A.2d 1011, 1015 (Pa. Super. 1991) (trial court did not err in excluding irrelevant video evidence proffered by defendant that could confuse jury); ***cf. Commonwealth v. Cole***, 135 A.3d 191, 195-96 (Pa. Super. 2016) (trial court did not err in admitting video evidence and accompanying narration by police officer, where evidence was relevant, not unduly prejudicial, and would not mislead the jury).[6] Appellant's second issue does not merit relief.

Judgment of sentence affirmed.

---

[5] Arguments by counsel "are not evidence." ***Commonwealth v. Moore***, 263 A.3d 1193, 1206 (Pa. Super. 2021) (citation omitted).

[6] Even if, *arguendo*, the trial court erred, such error was harmless. "[A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error is harmless." ***Commonwealth v. Northrip***, 945 A.2d 198, 203 (Pa. Super. 2008) (citation omitted). "An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." ***Commonwealth v. Moore***, 937 A.2d 1062, 1073 (Pa. 2007); ***see also Jackson***, 2022 PA Super 156, *4 ("for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party."). Our review discloses that the evidence overwhelmingly established Appellant's guilt, and thus any prejudice from exclusion of the video was insignificant.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/2022